US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Nov 17, 2025
OFFICE OF THE CLERK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas
Harrison Division

In the Matter of the Search of:
**Information Associated with Google Account Name(s): Randy Burlison and Lacy ALeigh; OR Google User ID(s): 115148426710550357171 and 114495456572937819966; OR Email Address(s): landsculpting@gmail.com and lacylee4040@gmail.com that is Stored at Premises Controlled by Google.**

Case No. 3:25-cm-00019

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **See Attachment A. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Specifically, the Court of the Western District of Arkansas is "a district court of the United States...that -has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).**

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251(a)(1)<br>18 U.S.C. § 2252A(a)(2)<br>18 U.S.C. § 2252A(a)(5)(B) | Transportation of Child Pornography; Receipt or Distribution of Child Pornography; Possession of Child Pornography |

The application is based on these facts:

☑ Continued on the attached sheet. **See affidavit of HSI Special Agent Gerald Faulkner.**

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GERALD F FAULKNER Digitally signed by GERALD F FAULKNER Date: 2025.11.17 10:12:10 -06'00'

*Applicant's signature*

Gerald Faulkner, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: Nov. 17, 2025 @ 10:04 Am

*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Christy D. Comstock, Chief U.S. Magistrate Judge

*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Google, Inc. user accounts:

- **Source: Google Accounts (SUBJECT ACCOUNT)**
  **Google User ID: 115148426710550357171**
  **Account Name: Randy Burlison**
  **Email: landsculpting@gmail.com**

- **Source: Google Accounts (SUBJECT ACCOUNT)**
  **Google User ID: 114495456572937819966**
  **Account Name: Lacy Leigh**
  **Email: lacylee4040@gmail.com**

certain accounts that are stored at the premises controlled by Google, Inc. **between the time period of January 1, 2025, until the present** that is stored at premises owned, maintained, controlled, or operated by Google, Inc., 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be disclosed by Google, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Google Inc. ("Google"), including any messages, records, files, logs, or information that have been deleted but are still available to Google. Google is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Google passwords, Google security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other activities;

(c) All photos and videos uploaded, distributed, received, or saved by that user ID;

(d) All profile information, status updates, and contact lists associated with the accounts;

(e) All other records of communications and messages made or received by the user;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All past and present lists of friends or contacts created by the account;

(i) Any and All information deleted from the accounts but still recoverable by Google;

(j) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(k) All privacy settings and other account settings, including privacy settings;

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B). involving the **SUBJECT ACCOUNTS** outlined herein since **January 1, 2025, until the present**, including, for the information identified on Attachment A, information pertaining to the following matters:

(a) Included, but not limited to, any and all sexually explicit images of minors

(b) Evidence indicating how and when the Google account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Google account owner;

(c) Evidence indicating the Google account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the sexual exploitation of children or involving nude images of children being sent and received via the Internet or other means.

(f) Any and all conversations, contacts, messages, emails, posts and/or chats involving the solicitation or enticement of minors to engage in sexually explicit conduct

and/or encouraging minors to produce images or videos of themselves nude or engaging in sexually explicit conduct. Any and all conversations with others, adult or minors, concerning the sexual exploitation of children or the sending or receiving of images of minors, nude, clothed, or otherwise.

## Affidavit in Support of Application for Search Warrant

I, Gerald F. Faulkner, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been employed with HSI since April, 2009. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. This Affidavit is made in support of applications for a search warrant for information associated with a certain account that is stored at a premises owned, maintained, controlled, or operated by Google Inc., an electronic mail/Internet service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. This Affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2252A(a)(1) (transportation of child pornography), 2252A(a)(2) (receipt or distribution of child pornography, and 2252A(a)(5)(B) (possession of child pornography); to require Google Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the electronic mail accounts (email):

- **Source: Google Accounts (SUBJECT ACCOUNT)**
  **Google User ID: 115148426710550357171**
  **Account Name: Randy Burlison**
  **Email: landsculpting@gmail.com**

- **Source: Google Accounts (SUBJECT ACCOUNT)**
  **Google User ID: 114495456572937819966**
  **Account Name: Lacy Leigh**
  **Email: lacylee4040@gmail.com**

3. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that evidence constituting violations of Title 18, United States Code, Sections 2252A(a)(1) (transportation of child pornography), 2252A(a)(2) (receipt or distribution of child pornography, and 2252A(a)(5)(B) (possession of child pornography) are currently present in the accounts described in Attachment A. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband/fruits of these crimes further described in Attachment B.

**Statutory Authority**

4. This investigation concerns alleged violations of Title 18, United States Code, Sections 2252A(a)(1) (transportation of child pornography), 2252A(a)(2) (receipt or distribution of child pornography, and 2252A(a)(5)(B), (possession of child pornography.

a) 18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly transporting child pornography using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

b) 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed or has been shipped or transported in or affecting interstate or foreign

commerce by any means, including by computer.

c) 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

d) The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

e) The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

f) The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

g) The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

h) The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction,

including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## BACKGROUND REGARDING COMPUTERS AND THE INTERNET

5. Your Affiant has become familiar with the Internet, which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.

6. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail") or Instant Messaging services (IM). An individual who wants to use the Internet must first obtain an account with a computer or cellular telephone that is linked to the Internet – for example, through a commercial service – which is called an "Internet Service Provider" or "ISP". Once the individual has accessed the Internet, whether from a residence, a university, a place of business or via their cellular service provider, that individual can use Internet services, including sending and receiving e-mail and IM.

7. The Internet is a worldwide computer network that connects computers and facilitates the communication and the transfer of data and information across state and international boundaries. A user accesses the Internet from a computer network or Internet Service Provider ("ISP") that connects to the Internet. The ISP assigns each user an Internet Protocol ("IP") Address. Each IP address is unique. Every computer or device on the Internet is referenced by a unique IP address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 255. An example of an IP address is 12.345.678.901. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records, depending on the ISP's record retention policies.

8. Based on my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals involved in sexually exploiting children online and receiving, distributing, or collecting child pornography.

9. Those who sexually exploit children online and exchange or collect child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature and communications about such activity.

10. Those who sexually exploit children online and trade or collect child pornography may collect sexually explicit or suggestive materials, in a variety of mediums, including photographs, magazines, motion pictures, video tapes, books, slides or drawings, or other visual media, including digital files. Child pornography collectors oftentimes use these materials for their own sexual arousal and

gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

11. In some recent cases, however, some people who have a sexual interest in children have been found to download, view, then delete child pornography on a cyclical and repetitive basis, and to regularly delete any communications about the sexual abuse of children rather than storing such evidence on their computers or digital devices. Traces of such activity can often be found on such people's computers or digital devices, for months or even years after any downloaded files have been deleted.

12. Those who sexually exploit children online and trade or collect child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

13. When images and videos of child pornography or communications about sexual abuse of children are stored on computers or computer servers, forensic evidence of the downloading, saving, and storage of such evidence may remain on the computers or digital media for months or even years even after such images and videos have been deleted from the computers or digital media.

**<u>Background Regarding Google Email (Gmail) Accounts</u>**

14. Based on my knowledge and experience and information obtained from other law enforcement personnel with training and experience in this area, the following is known about Gmail accounts:

a. Gmail is a free, advertising supported email service provided by Google. Users may access Gmail as secure webmail.

b. Gmail initially started as an invitation-only beta release on April 1, 2004 and it became available to the public on February 7, 2007.

c. Individual Gmail messages, including attachments, may be up-to 25 MB. Gmail has a search-oriented interface and a "conversation view" similar to an Internet Forum.

d. Users can buy additional storage, shared among Gmail, Google Drive and Google+ Photos, through a monthly subscription plan. As of 2015, storage up to 15 GB is free, and paid plans are available for up to 30 TB for personal use.

e. Google updated the Gmail inbox with tabs which allow the application to categorize the user's emails. The five tabs are: Primary, Social, Promotions, Updates and Forums. These tabs also appear in Gmail's mobile version.

f. Gmail Mobile is a free service developed to provide access to Gmail from mobile devices. Gmail Mobile offers many of the features as Gmail delivered effectively to smaller, mobile screens.

g. In 2010, Google commenced its new social networking tool, Google Buzz, which integrated with Gmail allowing users to share links and media, as well as status updates with social media platforms.

**Background Regarding Google Drive Accounts**

15. Based on my knowledge and experience and information obtained from other law enforcement personnel with training and experience in this area, the following is known about Google Drive accounts:

a. Google Drive is a file storage and synchronization service created by Google. It allows users to store files in the cloud, share files, and edit documents, spreadsheets, and presentations with collaborators.

b. For Google Drive to synchronize files between the user's computer and Google Drive storage, the Google Drive 'client' software must be running on the users computer. The client communicates with Google Drive to synchronize data.

c. Google Drive can be accessed offline on the Google Chrome browser via a Chrome application, which can be installed from the Chrome Web Store. Documents, spreadsheets, presentations and drawings can also be viewed and edited offline through standalone Chrome applications.

d. Google gives every user 15 GB of online storage space, which is shared across three of its most-used services, Google Drive, Gmail, and Google+ Photos.

e. Google Drive incorporates a system of file sharing in which the creator of a file or folder is, by default, its owner. The owner can regulate the public visibility of the file or folder. Files or folders can be shared privately with particular users having a Google account, using their @gmail.com email addresses. Sharing files with users not having a Google account requires making them accessible to anybody with the link. This generates a secret URL for the file, which may be shared via email, blogs, etc. Files and folders can also be made public on the internet, which means that they can be indexed by search engines and thus can be found and accessed by anyone.

**Summary of the Investigation to Date**

16. In March 2025, your Affiant received lead information from the HSI Cyber Crimes Center (C3), headquartered in Fairfax, Virginia, regarding an identified online user who was believed to be hosting an online child exploitation chat room and engaged in the possession and distribution of child pornography files. The information following was provided to your Affiant from C3.

17. On or about January 22, 2025, a HSI online undercover agent (UCA) was conducting

undercover operations within "Application A" and observed a member on the platform with the username "Lacy" in a chatroom called "hot love No Limit". The UCA then sent the user profile "Lacy" a request to communicate privately on the platform to which the member accepted and they began exchanging private messages between the two online profiles. During the initial conversation, "Lacy" made the following statements to the UCA:

- "I like 7-13 mostly, any age lesbian content though"
- "When I was 24 I was with a 16-year-old, just 2 times"
- "I was pregnant at 19, married, divorced at 25, been a single mom too. I'm 44 now. I love masturbation and lesbian stuff more than anything"

18. On or about February 10, 2025, the UCA and "Lacy" continued communicating within "Application A" and when asked by the UCA if the user knew any additional chatrooms on the platform, "Lacy" replied, "NL is one room, I have a lesbian room".

19. On or about February 11, 2025, the UCA was added to a private chatroom named "lesbian". Upon entering and reviewing the members of the chatroom, the UCA identified "Lacy" as the "Owner" of the chatroom with two additional online users listed as "Moderators". On this same date and while logged into the "lesbian" chatroom, the UCA observed the "Lacy" user profile disseminate fourteen (14) images of child erotica and one (1) image and five (5) videos of child sexual abuse material (CSAM)[1] to the "lesbian" chatroom for all the online members to comment and view.

20. On or about March 21, 2025, while again interacting/observing in the "lesbian" chatroom, the UCA observed the "Lacy" user profile disseminate two (2) videos depicting CSAM as well as an additional image of what appeared to be age-difficult, sexually explicit material to the "lesbian" chatroom.

[1] In this Affidavit, Child Sexual Abuse Material (CSAM) is used interchangeably with "child pornography" and only describes files that meet the federal definition of child pornography found in Title 18, United States Code, Section 2256(8).

21. While continuing investigative activities within "Application A", the UCA was granted access into an additional chatroom which revealed the "Lacy" user profile was also a member and listed "Moderator" of a group called "nl group where everything is allowed". On or about March 21, 2025, the UCA observed the "Lacy" user profile disseminate four (4) images and three (3) videos of CSAM to the private chatroom "nl group where everything is allowed" for all the online members to comment and view.

22. According to the lead information received by your Affiant, as of around March 21, 2025, the UCA had observed approximately thirty-five (35) Members in the "lesbian" chatroom which is believed to be created and operated by the online user profile "Lacy" within "Application A". Since the initial invitation into the "lesbian" chatroom, the UCA has observed the private room utilized solely for discussions of the sexual exploitation of children and the distribution of CSAM.

23. In March 2025, Apple, Inc. was served a with a court order from the Western District of North Carolina (1:25mc9) by HSI C3 requesting user information related to the following Apple Push Tokens associated with "Application A" user XY3GT3G4D and displaying the online user profile name "Lacy":

- efe8697fcefeefc806e563126bc4e801f70bfa6346addce36c8af65959921089
- c3832ef5edfa1b5874f6f1953c5a4935333ac6c26101150b9508e5e51a6f9ea1
- 2e0c26c4d30023d8b7569ed213fda30bee94a27156089417c74c356a117b6c91
- 51ef0b4d85129f50401e544c2f838b2845e41507523a0624343a79cf7ac4055e

**NOTE**: "Push Token requests are based on an Apple Push Notification service token identifier. When users allow a currently installed application to receive notifications, a push token is generated and registered to that developer and device. Push Token requests generally seek identifying details of the Apple Account associated with the device's push token, such as name, physical address and email address." - Source: www.apple.com/legal/transparency/push-token.html

24. On or about March 10, 2025, Apple, Inc. provided HSI C3 with the following information related to the profile username "Lacy":

- **Name**: Randy Burlison

- **Address**: 2432 KY 206, Dunnville, Kentucky, 42528
- **Phone**: 606-XXX-4320
- **Email**: landsculpting@gmail.com
- **IP Address**: 104.249.170.1 (Provider: Reynolds Media)

25. HSI C3 conducted Department of Homeland Security (DHS) and open-source database queries which revealed the Push Token user "Randy Burlison" was believed to be Randy James BURLISON with a date of birth of XX/XX/1967 and assigned the Social Security Administration number (SSN) XXX-XX-1346. BURLISON was listed as having a telephone number of 606- XXX -4320 and associated residential addresses located at 2432 Ky 206 in Dunnville, Kentucky and 1640 Wolf Springs Road in Harrison, Arkansas. Additional queries by HSI C3 of publicly accessible social media platforms located a "Randy Burlison" currently living in Harrison, Arkansas.

26. On or about March 18, 2025, HSI C3 served a federal Summons on Reynolds Media for the IP address 104.249.170.1 for specific dates and times associated to the Apple, Inc. Push Token account linked to the "Application A" user profile "Lacy". Reynolds Media provided HSI C3 with a list of names and addresses that were associated with IP address 104.249.107.1 during the specific times in question. According to the returned information, one of the names and addresses associated with the IP address at the requested times was listed as being:

- Name: Ted Gregoire
- Address: 1640 Wolf Springs Road North in Harrison Arkansas 72601
- Registration Date: 05/16/2022

27. Your Affiant conducted DHS and open-source database queries which revealed Ted Gregoire is believed to be Theodore William Gregoire with a date of birth of XX/XX/1955 and assigned the SSN XXX-XX-2641. Gregoire is issued an Arkansas Driver's License bearing the number XXXXX0118 which was issued on 06/08/22 and expires on 12/01/30. The address associated with the

Arkansas Driver's License is listed as being 1640 Wolf Springs Road in Harrison, Arkansas 72601.

28. On or about March 28, 2025, HSI C3 served a federal Summons to AT&T for the telephone number 606- XXX -4320 which was the phone number linked to the Apple, Inc. Push Token account associated with the "Application A" user XY3GT3G4D and displaying the online profile username "Lacy". AT&T responded and provided the following information regarding the subscriber on record for telephone number 606- XXX -4320:

- **Name**: **RANDY BURLISON**
- **Billing Address**: 1640 WOLF SPRINGS RD, HARRISON, AR 72601
- **Service Start Date**: 07/15/2024
- **Account Status**: OPEN
- **IMSI**: 310150605572781

29. Your Affiant then conducted additional DHS and open-source database queries which revealed BURLISON was issued an Arkansas Driver's License bearing the number XXXXX0122 which was issued on 02/28/24 and expires on 02/28/28. The address associated with the Arkansas Driver's License is listed as being 1640 Wolf Springs Road in Harrison, Arkansas 72601.

30. In April 2025, your Affiant received and reviewed multiple files from HSI C3 in reference to the captured evidence outlining the chats, images, videos and account information pertaining to the "Lacy" user profile. On or about April 19, 2025, your Affiant located and reviewed the following CSAM files flagged by the UCA as having been disseminated by the "Lucy" user profile on the "Application A" "lesbian" and "nl group where everything is allowed" chatrooms:

- **Chatroom**: "lesbian"

  **File Name**: ff9e6830-e894-11ef-8f72-579d4ce5fb0e.mov

  **Description**: This video is approximately 01:55 long and depicts an adult female dressed in a bikini performing oral sex on a completely naked prepubescent female, approximately six (6) to nine (9) years of age. The prepubescent female is seen laying on her back with her legs spread

exposing her vagina and then puts her legs up towards her head while the adult female continues to perform oral sex.

- **Chatroom**: "nl group where everything is allowed"

  **File Name**: 02230b10-0640-11f0-9617-23ee45d08a6d.mov

  **Description**: This video is approximately 1:05 long and depicts an adult female with her breasts exposed and a prepubescent female, approximately three (3) to five (5) years of age, naked from the waist down with her legs spread exposing her vagina. The prepubescent female is seen breastfeeding while the adult female rubs in the vagina area of the child.

31. On or about April 21, 2025, an HSI Task Force Officer assigned to the Fayetteville, Arkansas Field Office, with assistance from local law enforcement, conducted aerial surveillance of 1640 Wolf Springs Road in Harrison, Arkansas 72601. The surveillance revealed the property contains what appears to be two residential structures and a large shed or workshop on a multi-acre lot. Through aerial surveillance officers were also able to positively identify **BURLISON** as he walked around the multi-acre lot and stood on the porch of one of the residential structures while utilizing a cellular telephone.

32. On April 29, 2025, pursuant to an ongoing child exploitation investigation, HSI Special Agents and Task Force Officers assigned to the Internet Crimes Against Children (ICAC) Task Force, with assistance from state and local law enforcement affiliates, arrived at the properties located at 1640 Wolf Springs Road in Harrison, Arkansas to execute a federal search warrant for possible violations of Title 18, United States Code, Sections 2252A(a)(1) (transportation of child pornography), 2252A(a)(2) (receipt or distribution of child pornography), and 2252A(a)(5)(B) – (possession of child pornography. During the execution of the federal search warrant, **BURLISON** was encountered in one of the residences and agreed to speak with your Affiant regarding the ongoing investigation.

33. During a post-Miranda interview, **BURLISON** explained his uncle (Ted Gregoire), who resides at the next-door residence on the same property, pays for internet services and is the subscriber on record. **BURLISON** further stated he accesses his uncle's internet wirelessly through a password

protected connection. **BURLISON** admitted to owning an Apple iPhone for the last couple of years with cellular service through Cricket (AT&T). **BURLISON** further acknowledged being assigned and utilizing the cellular telephone number 606- XXX -4320. This is the same cellular telephone number found registered to the Apple Push Tokens associated with the "Application A" user XY3GT3G4D and displaying the online user profile name "Lacy". **BURLISON** provided his personal email account which he currently utilizes as being landsculpting@gmail.com which he has operated for approximately the last fifteen years. Your Affiant asked **BURLISON** if he had knowledge of "Application A" to which he initially stated he has heard of the platform and then asked, "isn't that a chat thing or something". **BURLISON** was asked if he would provide additional information about "Application A" and he again responded, "I think it's a chat thing or something". **BURLISON** then attempted to correct himself and stated he was aware of an online application named (redacted) but didn't know anything about "Application A".

34. At the conclusion of the federal search warrant, multiple internet capable electronic devices were seized by HSI from **BURLISON's** residence, including his Apple iPhone. Initial forensic examinations conducted on **BURLISON's** cellular telephone revealed it was an Apple iPhone Pro Max with a Device Name of "Randy's iPhone" and an Apple ID of "landsculpting@gmail.com" which was last backed up to the Apple iCloud on approximately April 29, 2025.

35. Forensic examinations located additional User Accounts located within **BURLISON's** Apple iPhone showing believed usage and ownership of the device such as:

- Source: Facebook Messenger
  Facebook User ID: 100009195847464
  Username: randyburlison
  Account Name: Randy Burlison
  Email: burlison.randy@yahoo.com
  Phone: 606- XXX -4320

- **Source: Google Accounts**
  **Google User ID: 115148426710550357171**
  **Account Name: Randy Burlison**
  **Email: landsculpting@gmail.com**

- Source: Life360
  Account Name: Randy Burlison
  Email: landsculpting@gmail.com
  Phone: 606- XXX -4320

- Source: Snapchat
  Snapchat User ID: 631d3092-e62c-4e7a b326-25cc1a9847cc
  Username: randyburlison
  Account Name: Randy Burlison
  Phone: 606- XXX -4320

36. Continued forensic examinations conducted on **BURLISON's** Apple iPhone revealed Log Entries of digital artifacts indicating that "Application A" was believed to be on the device on or about November 22, 2024, and then possibly deleted. Forensic examinations are ongoing to determine the date in which **BURLISON** is believed to have re-installed "Application A" onto his personal electronic devices.

37. Forensic examinations additionally showed the Apple iPhone had digital artifacts containing multiple images and videos of CSAM as well as child erotica material which are believed to have been accessed on the device by **BURLISON**. During the review, your Affiant located the same CSAM, and child erotica images and videos located on **BURLISON's** Apple iPhone which were posted to the "lesbian" chat room by the "Lacy" moderator user profile and observed by the HSI UCA.

38. While reviewing the forensic reports, Your Affiant located multiple social media profiles

and email accounts associated with a "Lacy" online user on the seized Apple iPhone which are believed to have been operated by **BURLISON.** Initial reviews of the digital data revealed the following user accounts:

- Source: Facebook Messenger
  Facebook User ID: 100089304120399
  Username: lacyadams
  Account Name: Lacy Adams
  Email: lacylee4040@gmail.com
  Date of Birth: XX/XX/1980

- **Source: Google Accounts**
  **Google User ID: 114495456572937819966**
  **Account Name: Lacy Leigh**
  **Email: lacylee4040@gmail.com**

- Source: Snapchat
  Snapchat User ID: 623e94fb-f8b2-481d 8103-1a136eab4aea
  Username: just_lacygrl
  Account Name: Lacy Adams

39. Based on the initial review of forensic reports, your Affiant believes **BURLISON** created the "Lacy" profiles and email accounts from copied and reproduced social media accounts of a genuine person(s) he found online. **BURLISON** is then believed to have portrayed himself as "Lacy" to internet users through fictitiously created social media and email accounts such as Facebook, Snapchat, and Google. Various online chat conversations were located within the forensic examinations revealing that **BURLISON** was believed to be interacting online with multiple unknown female users through the fictitious "Lacy" profile via Facebook, Snapchat, and Google. Your Affiant further believes, based on the initial review of forensic reports, that **BURLISON** utilized the imitation accounts to create the moderator

profile on "Application A" to post the flagged images and videos of CSAM and interact with other online participants within the chat rooms.

**Execution of the Search Warrant**

40. Because Google, Inc. servers containing the information and evidence are located outside of the Western District of Arkansas, your Affiant will not physically execute this search warrant at Google, Inc. in Mountain View, California. Instead, a copy of the search warrant will be uploaded to the Google, Inc. Security/Legal Compliance Department located in Mountain View, California via Google, Inc. law enforcement portal.

41. Upon receiving the copy of the search warrant the Google, Inc. Security/Legal Compliance Department will ensure that the requested records are recovered from their servers in a manner consistent with the preservation and handling of evidentiary material. The execution of the search warrant in this manner will ensure that Google, Inc. business operation is uninterrupted by the otherwise physical execution of a search warrant by law enforcement and provides the least intrusion manner for all parties involved.

## Conclusion

42. Based on the foregoing information, probable cause exists to believe there is located on the computer servers of Google Inc., 1600 Amphitheatre Parkway, Mountain View, California 94043, evidence of violations of Title 18, United States Code, Sections 2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B). Your Affiant prays upon this honorable court to issue a search warrant to Google Inc., for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2252A(a)(1), 2252A(a)(2), and 2252A(a)(5)(B).

GERALD F FAULKNER

Digitally signed by GERALD F FAULKNER
Date: 2025.11.17 10:12:54 -06'00'

Gerald Faulkner, Special Agent
Homeland Security Investigations

Affidavit subscribed and sworn to before me this 17th day of November, 2025.

Christy Comstock

Honorable Christy D. Comstock
Chief United States Magistrate Judge